# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| vs. | * | Case No.: CCB-19-0351 |
| **CHERYL DIANE GLENN** | * | |
| Defendant | | |

\* \* \* \* \* \* \* \* \*

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING (REDACTED)

Defendant, Cheryl Diane Glenn ("Ms. Glenn"), by her counsel, William C. Brennan, Jr., submits this memorandum in support of the arguments to be presented by her at sentencing. This memorandum will discuss her offense conduct, her acceptance of responsibility ███████, her extraordinary accomplishments as a citizen and legislator, her age and health and the factors set forth in 18 U.S.C. §3553(a). Ms. Glenn asks this Honorable Court to consider the information presented in this memorandum when fashioning a sentence that is "sufficient, but not greater than necessary, to comply with the purposes of sentencing."

### Requested Sentence

Ms. Glenn respectfully requests that the Court grant a variance from the guideline range set forth in the U.S. Sentencing Guidelines and impose a sentence of probation that includes a condition that substitutes home detention (with

location monitoring) for imprisonment. Such a sentence will provide that Ms. Glenn is punished for her criminal conduct yet also take into account Ms. Glenn's significant accomplishments, her age and her health. The conditions of probation should include an additional requirement that Ms. Glenn complete a significant amount of community service, pay the special assessment of $100 and make restitution.[1]

<center>Procedural History</center>

On July 23, 2019 the United States filed, under seal, a two-count criminal information charging Ms. Glenn in Count One with Honest Services Wire Fraud in violation of 18 U.S.C. §§ 1343 & 1346 and in Count Two with Use of Interstate Facility to Carry on Unlawful Activity (Travel Act) in violation of 18 U.S.C. § 1952. The criminal information was unsealed on December 23, 2019 and on January 22, 2020 Ms. Glenn pleaded guilty to the charges pursuant to a written plea agreement. She has remained released on her own personal recognizance since then with sentencing currently scheduled for Wednesday, July 29, 2020.

<center>Plea Agreement and Guideline Considerations</center>

According to the plea agreement and the Presentence Investigation Report ("PSR"), the base offense level for count one is 14. USSG §2C1.1(a)(1). Two levels are added because the offense involved more than one bribe. USSG

---

[1] The restitution amount should be $18,750 (as should the forfeiture amount). The total bribes were $33,750. But, $15,000 was seized from Ms. Glenn at the time she was confronted by law enforcement and those funds remain in the possession of the United States.

§2C1.1(b)(1). Four levels are added because the value of the bribe was more than $15,000 but less than $40,000. USSG §2C1.1(b)(2) and USSG §2B1.1(b)(1)(C). Four levels are added because the defendant was an elected public official. USSG §2C1.1(b)(3). Additionally, two levels are added because the defendant attempted to impede the investigation of the offense of conviction. §3C1.1. Based on the foregoing, the adjusted offense level for the crimes is 26. (PSR ¶¶ 97 – 105).

Ms. Glenn clearly demonstrated her acceptance of responsibility for these offenses and pursuant to USSG §3E1.1(a) there is an initial reduction of two levels with the anticipation of a further one level reduction pursuant to USSG §3E1.1(b) resulting in a **total offense level of 23**. (PSR ¶¶ 107 – 109).

## Prior Criminal History

Ms. Glenn has no prior criminal convictions. As such, she is properly assessed zero criminal history points, placing her in **criminal history category I**. (PSR ¶¶ 110 – 112)

## A Reasonable Sentence in this Case

Counsel is confident that the Court is fully cognizant of the statutory sentencing scheme at 18 U.S.C. §3553(a) and the applicable case law of *United States v. Booker*, 543 U.S. 220 (2005), *Rita v. United States*, 551 U.S. 338 (2007), and *Gall v. United States*, 552 U.S. 38 (2007). Rather than rehash boilerplate language from previous sentencing memoranda, counsel will get right to the point.

Why should this Court sentence Ms. Glenn to home detention in this case? Four reasons: (1) her prompt acceptance of responsibility ▓▓▓▓▓▓▓▓; (2) her history and characteristics; (3) the nature and circumstances of her participation in the offense; and (4) the need to promote respect for the law (including adequate deterrence).

The United States Supreme Court highlighted in *Pepper v. United States*, 562 U.S. 476 (2011), that the cornerstone of federal sentencing is to "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id.* at 487. Ms. Glenn is just such an individual who should be carefully viewed as having unique human failings.

<u>Prompt Acceptance of Responsibility</u> ▓▓▓▓▓▓▓▓

Ms. Glenn was confronted with her criminal wrongdoing by law enforcement on Monday, February 11, 2019 at a location in Annapolis, Maryland. At that time Ms. Glenn could have outright denied that her conduct was criminal, attempted to obfuscate her role in the matter or otherwise endeavored to avoid the consequences of her actions. She did none of that. She immediately admitted that what she had done was wrong and criminal. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[redacted]

[redacted]

History and Characteristics of Ms. Glenn

Ms. Glenn's life story is extraordinary. She overcame tremendous hardships as a child, young woman and mature adult to rise to a position of respect through her extensive public service. Some of her personal trials and tribulations are particularly noteworthy.

*Personal Misfortunes*:

Ms. Glenn is a two-time survivor of domestic violence. She has faced many personal challenges during her life.

- Ms. Glenn attended ten different elementary schools because her family was constantly moving.

- Her father was physically abusive towards Ms. Glenn and her mother.

- Her father shot and wounded Ms. Glenn's mother during an altercation.

- Ms. Glenn herself was homeless for one year at age 13.

- Ms. Glenn eventually graduated from Western High School in Baltimore in 1969.

- Her brother Maurice Jennings was shot and killed at age 26.

- Her brother Kenneth Ferguson, died from complications related to diabetes when he was in his 50s.

- She cared for her elderly mother who died of kidney cancer in 2007.

- She also cared for her father who died of heart disease in 1988.

- Ms. Glenn's sister Darlene Milling-Bey died of a stroke and other health issues in her 60s. Ms. Glenn had been the primary caretaker for Ms. Milling-Bey for many years before her death.

- Ms. Glenn was married to Freddy Bishop for about five years when she was in her 20s. Mr. Bishop had substance abuse and mental health issues,

and he was physically abusive toward Ms. Glenn. Mr. Bishop committed suicide when their daughter was an infant.

- Ms. Glenn adopted her granddaughter Taylor Bishop when Taylor was age 1.

- The defendant married her third husband, Benjamin Gregory Glenn, Sr. in October 1990.

- Mr. Glenn died from a stroke and heart attack in May 2015 at age 63.

*Financial Challenges*:

Ms. Glenn has not lived a sophisticated or glamorous life. She does not own luxurious homes, drive expensive automobiles, wear fancy clothes, purchase opulent jewelry, or take exotic vacations.

- She drives a seven-year-old mini-van with 87,000 miles on it.

- She lives in a two story rowhouse in the Cedonia section of Baltimore City. The house was most recently appraised at $122,200.

- Her home was/is in need of substantial repairs. The roof leaked, there was mold infestation in the basement and the entry platform needed to be replaced. These were not mere cosmetic improvements.

- Upon Ben Glenn's death Ms. Glenn was faced with federal tax liens.

- When Ben Glenn fell ill, he retired on disability from the carpenter's union and was no longer eligible for the union's life insurance program.

- But, Ms. Glenn and her late husband, Ben Glenn, believed that he still had sufficient life insurance in place. However, Ben Glenn, despite his best efforts[2], had apparently (according to the insurance company) not correctly changed the beneficiaries on his remaining life insurance policy. The result was that upon his death, the beneficiaries he had designated before he married Ms. Glenn, were still in place. His adult children from his first marriage, his sisters, his brothers, his half sister and others were all still beneficiaries.
- Ms. Glenn received very little of the proceeds from her late husband's life insurance policy.
- Ms. Glenn faced significant and substantial financial challenges upon her husband's death. Her home was in some disrepair and she did not have adequate funds to meet the financial needs of her household.

*Health Issues*

Ms. Glenn is 69 years old and faces numerous health issues.

- Ms. Glenn has osteoarthritis in her legs, arms, hands, back, and neck.
- She has a torn meniscus in her right knee for which surgery is needed but not yet scheduled.

---

[2] Ben and Cheryl Glenn had gone to the financial planner/insurance broker to explore obtaining more insurance and amending the beneficiary to Cheryl Glenn. They believed that they had done so. Unfortunately, the insurance company claimed it did not receive the form from the broker changing the beneficiaries.

- She has Achilles tendinitis in her left heel which also requires surgery.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████

- On December 17, 2019 Ms. Glenn was treated for an upper respiratory infection and because of her prior history of pneumonia she was prescribed an antibiotic – Zithromax - and an Albuterol inhaler. (See, Exhibit B.)

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████

The Court will sentence Ms. Glenn at a time of global anxiety and uncertainty. The COVID-19 pandemic has touched every person on the planet and its toll will be felt long after a vaccine is discovered. Nowhere is the anxiety and risk as great as it is for incarcerated persons.

The global pandemic is not a neutral fact at Ms. Glenn's sentencing; it is directly relevant to 18 U.S.C. §3553(a)(1)'s instruction that the Court must consider "the nature and circumstances of the offense and the history and

characteristics of the defendant." Ms. Glenn's anticipated incarceration during the pandemic is relevant factor weighing heavily in favor of a variant sentence.

Here, we ask the Court to engage in this compassionate exercise. In December 2019 Ms. Glenn was seen at MedStar Health Urgent Care at Federal Hill and diagnosed with an upper respiratory infection. (See, Exhibit B). Given this recent lung condition Ms. Glenn is likely at higher risk for COVID-19's most dangerous symptoms. COVID-19's emergence in the BOP weighs in favor of a variant sentence.

*Personal Accomplishments*

Despite, or perhaps because of, her difficult upbringing Ms. Glenn has overcome many obstacles and has achieved a measure of success in her life. Ms. Glenn was elected to the Maryland General Assembly in 2006, and she served as a state delegate from January 2007 until she resigned in December 2019, as a result of this case. She represented the 45th District in Baltimore City. As a member of the Maryland General Assembly, she served as: (a) Chair of the Banking, Consumer Protection, and Commercial Law Subcommittee of the Economic Matters Committee; (b) Vice Chair of the Rules and Executive Nominations Committee; (c) Chair of the Baltimore City Delegation; and (d) member of the Women Legislators of Maryland Caucus and the Legislative Black Caucus of Maryland.

She has resigned her position with the legislature, lost her pension benefits and faces public disgrace and humiliation. The irony – perhaps deservedly so – is that her economic crimes have caused her to lose her pension. Attempted illegal financial gain has resulted in significant financial loss.

Yet, despite this personal humiliation, those persons who have known and interacted with Ms. Glenn over the years have come to her defense. While counsel for Ms. Glenn could wax eloquently about her character, the best measure of a person can and should be gleaned from those who know her the best – in a family, employment, community and religious environment. Accordingly, counsel will submit to the Court, character letters from family, longtime friends and colleagues of Ms. Glenn. (Exhibit C.) They speak to her character, her generosity, and her true humanity. These letters movingly describe the real person that is Cheryl Glenn.

## Nature and Circumstance of the Offense

Ms. Glenn committed a crime. She took bribes. She fully accepts responsibility for her actions. But was it a crime motivated by pure greed? Was her descent into criminality motivated by a desire to acquire or possess more than what she needed or deserved? Or was her conduct the result of a widow's reckless attempt to survive the death of her husband when faced with serious financial difficulties? While many people who experience financial stress do not resort to criminal conduct, Ms. Glenn's personal household situation suggests an

explanation – but not an excuse – for her defalcations. She was alone, she was in financial despair and she succumbed to temptation offered by a person who she thought was a friend. Her situation illustrates what the Supreme Court in *Pepper, supra* described as "a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment."

<u>The Need to Promote Respect for the Law (Adequate Deterrence)</u>

Whenever good people become involved in non-violent criminal activity there is a legal collision between a defendant's innate goodness and the need to deter others from similar conduct. General, as opposed to specific, deterrence is a concern in this case as it is in most criminal cases. Ms. Glenn has learned her lesson – there is no need to reform her conduct. However, what message can and should the Court send to deter others from similar conduct?

The basic rationale for general deterrence is that if there is no punishment others will attempt to engage in similar conduct – first with the hope that they will not get caught and second if they do get caught there will be little, if any, adverse consequences. Does the crime thereby become a risk worth taking?

In answering this conundrum there should be an acknowledgement that adequate deterrence is more than just "jail time." Human behavior is influenced by many factors – incarceration is but one of many negative inducements available. There are significant and far-reaching collateral consequences for committing a

federal felony. As discussed *supra* some have already impacted Ms. Glenn. She has been publicly humiliated; she has lost the respect from many of her former colleagues; and at age 69 she has lost her pension.

Most of Ms. Glenn's adult life has been in public service – as a community activist and as a member of the Maryland House of Delegates. Her past was full of accomplishments and her future offered prospects of continued public service. Her personal humiliation among friends and family has been intense. Her personal identity is no longer that of a legislator – it is as a convicted federal felon. That is significant deterrence.

Depriving Ms. Glenn of her freedom through home detention with location monitoring as a substitute for imprisonment would have a demonstrable and long-term effect on her conduct and the conduct of others.

Why must it always be jail time? *See United States v. Qualls*, 373 F.Supp.2d 873, 877 (E.D. Wis. 2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to *lengthy incarceration* than is necessary to deter a defendant who has already served serious time yet continues to re-offend").

Conclusion

Ms. Glenn accepted bribe money – that was a crime that causes the public to lose confidence in government. So punishment must be imposed. But,

> The sentencing judge [is] to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue.

*United States v. Koon*, 518 U.S. 81, 113 (1996).

Upon considering the sentencing range established by the United States Sentencing Guidelines; Ms. Glenn's prompt acceptance of responsibility ▌ ▌; her history and characteristics; the nature and circumstances of her participation in the offense; and the need to promote respect for the law (including adequate deterrence), this Honorable Court should find that a sentence of probation with a condition that specifies home detention with location monitoring as a substitute for imprisonment and a $100 special assessment is "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in 18 U.S.C. §3553(a).

Ms. Glenn is prepared to respect and serve whatever sentence is imposed by this Honorable Court and is determined to return to her family and her community a better person.

July 15, 2020  _____/s/_____
William C. Brennan, Jr.

Brennan McKenna & Lawlor, Chtd.
Bar Number: 00465
6305 Ivy Lane, Suite 700
Greenbelt, MD 20770
301.474.0044 (telephone number)
301.474.5730 (facsimile number)
wbrennan@brennanmckenna.com (email)

## CERTIFICATES OF SERVICE

I HEREBY CERTIFY that on this 23rd day of July, 2020, a copy of the foregoing Memorandum in Aid of Sentencing (Redacted) was delivered via ECF to the Office of the United States Attorney for the District of Maryland and was sent via email to the United States Probation Officer.

_____/s/_____
William C. Brennan, Jr.